UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

ROBERT R. GAGLIARDI and ROSITA
GAGLIARDI,

                   Plaintiffs,

      vs.

PRAGER METIS CPAS LLC and PHILIP
D'ANGELO,

                Defendants.

Case No. 23-cv-07454

**<u>ORAL ARGUMENT REQUESTED</u>**

**OBJECTION TO REPORT AND RECOMMENDATION OF THE
HONORABLE ROBYN F. TARNOFSKY,
UNITED STATES MAGISTRATE JUDGE, BY DEFENDANTS**

Christopher F. Lyon (CL3484)
GOLDBERG SEGALLA LLP
Attorneys for Defendant(s)
PRAGER METIS CPAS LLC and PHILIP
D'ANGELO
711 3rd Avenue, Suite 1900
New York, NY 10017
Phone: 646.292.8700
clyon@goldbergsegalla.com

**TABLE OF CONTENTS**

# Contents

**PRELIMINARY STATEMENT** ................................................................................ 1

**STANDARD OF REVIEW** ..................................................................................... 3

**OBJECTIONS** ........................................................................................................ 4

**I.    THE REPORT DID NOT ADDRESS THE MOTION TO VACATE
       PRIOR ORDERS, WHICH SHOULD STILL BE DONE AS TO
       MR. GAGLIARDI EVEN IF HE IS PERMITTED TO DROP
       FROM THIS ACTION AS THE COURT LACKED SUBJECT
       MATTER JURISDICTION** .......................................................................... 4

**II.   THE REPORT OVERLOOKS THE ILLUSORY NATURE OF
       THE ASSIGNMENT OF CLAIMS BETWEEN THE PLAINTIFFS
       AND THE COURT SHOULD DEEM THE ASSIGNMENT
       UNENFORCEABLE AS A MATTER OF LAW** ............................................. 5

**III.  THE REPORT'S IMPLICIT FINDING THAT MR. GAGLIARDI
       IS NOT AN INDISPENSABLE PARTY IS INCORRECT** ............................. 8

A.    STANDARD FOR REMOVAL OF A PARTY TO PRESERVE
      DIVERSITY JURISDICTION ....................................................................... 8

B.    THE REPORT INCORRECTLY CONCLUDED THAT THE
      ASSIGNMENT AGREEMENT TO MRS. GAGLIARDI RENDERED
      MR. GAGLIARDI INDISPENSABLE ......................................................... 8

C.    THE REPORT INCORRECTLY CONCLUDED THERE WAS NO
      PREJUDICE ................................................................................................ 10

D.    THE REPORT'S SUGGESTION THAT THE DECISION WILL BE
      DISPOSITIVE OF THE COUNTERCLAIM HIGHLIGHTS THE
      PREJUDICE INCURRED BY DEFENDANTS .......................................... 14

E.    A JUDGMENT IN THE ABSENCE OF MR. GAGLIARDI WOULD
      NOT BE ADEQUATE BECAUSE IT WOULD NOT ACCOUNT FOR
      MR. GAGLIARDI'S CULPABLE CONDUCT AND SEPARATE
      LIABILITY ................................................................................................. 15

**III.  THE MOTION TO DISMISS SHOULD BE GRANTED** ................................. 16

**CONCLUSION** ...................................................................................................... 16

IMANAGE\4771\0018\43005520.v1-10/24/24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CP Sols. PTE, Ltd. v. GE*,
  553 F.3d 156 (2d Cir. 2009)..................................................................8, 10, 15

*Curley v. Brignoli, Curley & Roberts Assocs.*,
  915 F.2d 81 (2d Cir. 1990)..........................................................................8

*Durant v. Traditional Invs., Ltd.*,
  135 F.R.D. 42 (S.D.N.Y. 1991) ..................................................................9

*Envirotech Corp. v. Bethlehem Steel Corp.*,
  729 F.2d 70 (2d Cir. 1984).........................................................................14

*Gens v. United States*,
  230 Ct. Cl. 42 (1982) .................................................................................5

*Gordon v. Vladislav Tsirkin CPA & Co., LLC*,
  229 A.D.3d 450 (2d Dept. 2024) ................................................................12

*Hanna v. Plumer*,
  380 U.S. 460 (1965).....................................................................................7

*JM Holdings 1 LLC v. Quarters Holding GmbH*,
  No. 20-CV-3480 (JPO), 2021 WL 860516 (S.D.N.Y. Mar. 8, 2021)..................9, 10

*Kartm v. N.Y.C. Health & Hosp. Corp.*,
  No. 17 Civ. 6888 (AT), 2020 U.S. Dist. LEXIS 98723, 2020 WL 2999228
  (S.D.N.Y. June 4, 2020)...............................................................................3

*Kramer v. Caribbean Mills, Inc.*,
  394 U.S. 823 (1969)..................................................................................1, 6

*Malman v. United States*,
  202 F.2d 483 (2d Cir. 1953).........................................................................9

*MAve Hotel Invs. LLC v. Certain Underwriters at Lloyd's*,
  347 F.R.D. 20 (S.D.N.Y. 2024) ...................................................................8

*Newman-Green, Inc. v. Alfonzo-Larrain*,
  490 U.S. 826, 109 S. Ct. 2218, 104 L. Ed. 2d 893 (1989).......................................8

*NYKCool A.B. v. Pacific Fruit, Inc.*,
  No. 10-CV-3867 (LAK) (AJP), 2010 WL 4812975 (S.D.N.Y. Nov. 24, 2010).....................13

ii

*On-Line Techs. V. Perkin Elmer Corp.*,
   141 F. Supp. 2d 246 (D. Conn. 2001) ........................................................................8

*Piligian v. Icahn Sch. of Med. at Mount Sinai*,
   490 F. Supp. 3d 707 (S.D.N.Y. 2020) .......................................................................3

*Republic of Philippines v. Pimentel*,
   553 U.S. 851 (2008) ................................................................................................15

United States v. Male Juvenile,
   121 F.3d 34, 38 (2d Cir. 1997) ..................................................................................3

*William A. Gross Const. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*,
   No. 07-CV-10639 (LAK) (AJP), 2009 WL 427280 (S.D.N.Y. Feb. 23, 2009) ......13

**Statutes**

28 U.S.C. § 636(b)(1)(C) ...................................................................................................3

28 U.S.C. §1359 .........................................................................................................5, 6, 7

New York General Obligations Law §13-101 ....................................................................7

**Other Authorities**

Fed. R. Civ. P. 19(a) .....................................................................................................9, 10

Fed. R. Civ. P. 19(b) .................................................................................................8, 9, 14

Fed. R. Civ. P. 21 ...........................................................................................................8, 9

Fed. R. Civ. P. 54 ...............................................................................................................1

Fed. R. Civ. P. 72(b)(3 .......................................................................................................3

IMANAGE\4771\0018\43005520.v1-10/24/24

## PRELIMINARY STATEMENT

Defendants PRAGER METIS CPAS LLC ("Prager Metis") and PHILIP D'ANGELO ("D'Angelo") (collectively referred to as "Defendants") submit this objection to the Report and Recommendation (the "Report") pertaining to (1) Defendants' motion to dismiss the Amended Complaint against them for lack of subject matter jurisdiction and to vacate all prior Reports and Recommendations and Orders assessing the merits of the action, including ECF Docs. #52 and #55, pursuant to Rule 54(b) and (2) Plaintiffs' motion to amend the complaint to drop Mr. Gagliardi as a Plaintiff to rectify subject matter jurisdiction.

First, Defendants' motion to dismiss the Amended Complaint and to vacate all prior reports or orders assessing the merits of the action was not fully briefed as the Plaintiff instead sought to amend the Complaint. The Report notably did not address the aspect of the motion dealing with vacatur of orders assessing the merits of the action, which is still a prevalent question as to Mr. Gagliardi, no matter whether he is dropped from the action or if the Court agrees that the matter should be dismissed.

Second, it is respectfully submitted that the Report incorrectly assessed the purported assignment of claims between Plaintiffs to be anything more than an illusory agreement because Mr. Gagliardi will be the effective beneficiary of any recovery by Mrs. Gagliardi, making this situation more akin to the *Kramer* case than the Report gives credence. Notably, absolutely zero authority has been cited to support the proposition that an assignment between a husband and wife to preserve subject matter jurisdiction is permissible.

Third, the Report did not address all of the grounds for prejudice that Defendants will sustain raised by Defendants – most notably, the Report seemingly gave zero consideration to the fact that Defendants' primary defense is premised on the culpable conduct of Mr. Gagliardi – i.e., he caused the damages he complains of – which is arguably the most prejudicial aspect. If Mr.

1

Gagliardi is removed as a party from this action, Defendants will be unable to assert their culpable conduct defense to the fullest extent and, instead, will be compelled to commence a state court action seeking indemnification and contribution, in addition to the breach of contract and account stated counterclaims which will be brought separately from the instant action.   This risks inconsistent results between the two actions – a ruling in the state court action could easily be contrary or contradictory to a ruling in the instant federal action.

Fourth, the reasoning of the Report as to prejudices was flawed, conflating legal principles. For example, the Report conflates "joint and several liability" that joint taxpayers have with a legal right to assert claims held by a spouse by virtue of marriage, which doesn't exist. The Report also relied on the apparent belief that Mr. Gagliardi didn't "intend" to file a separate suit as opposed to whether he would have the <u>right</u> to file the separate lawsuit – intents can change on a whim, rights generally do not.

Fifth, the Report illogically reasoned that the Plaintiff would be the only party harmed by failing to make Mr. Gagliardi available as a witness. Plaintiffs' case in chief does not require a demonstration of lack of fault by Mr. Gagliardi – in theory, Plaintiffs can attempt to make a *prima facie* case without Mr. Gagliardi ever testifying.   Conversely, it is the Defendants who experience all of the prejudice by Mr. Gagliardi being made unavailable – their case hinges on demonstrating that Mr. Gagliardi is the sole proximate cause of the Plaintiffs' damages.   The Report does not even consider such prejudices experienced by the Defendants.

Sixth, the Report inappropriately suggests that Defendants could seek all remedies from Mrs. Gagliardi <u>if</u> (an important if) it is demonstrated that she had an agent-principal relationship with Mr. Gagliardi – that is an additional elemental layer that the Defendants would have to prove that if Mr. Gagliardi remained in the action would be a non-issue. The implication that Defendants'

burden <u>should be raised</u> to make it easier for the Plaintiffs to preserve subject matter jurisdiction is problematic.

Additional specific issues are addressed and discussed below. Notwithstanding, it is clear that the prejudice that Defendants will sustain as a result of Mr. Gagliardi being removed from the action is substantial, and the Report does not address in any way how the prejudice can be alleviated. It is respectfully submitted that the Court should deny the motion to drop Mr. Gagliardi as a party from the action and grant the Defendants' motion in its entirety.

## STANDARD OF REVIEW

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A district court "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). In addition, "new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020) (quoting *Kartm v. N.Y.C. Health & Hosp. Corp.*, No. 17 Civ. 6888 (AT), 2020 U.S. Dist. LEXIS 98723, 2020 WL 2999228, at *3 (S.D.N.Y. June 4, 2020)).

**OBJECTIONS**

I.    **THE REPORT DID NOT ADDRESS THE MOTION TO VACATE PRIOR ORDERS, WHICH SHOULD STILL BE DONE AS TO MR. GAGLIARDI EVEN IF HE IS PERMITTED TO DROP FROM THIS ACTION AS THE COURT LACKED SUBJECT MATTER JURISDICTION**

Defendants' motion to dismiss the Amended Complaint and to vacate all prior reports or orders assessing the merits of the action was not fully briefed as the Plaintiffs instead conceded that with Mr. Gagliardi in the action, subject matter jurisdiction was lacking, and they sought to amend the Complaint. Plaintiffs' separate motion effectively agreed that subject matter jurisdiction was lacking where Mr. Gagliardi is a party and sought to drop Mr. Gagliardi as a party to remedy the subject matter jurisdiction issue. However, Plaintiffs' separate motion did not address the motion seeking vacatur of prior orders assessing the merits against Mr. Gagliardi, and the Report did not address this issue.

This Court's prior decisions relating to the assessment of the merits as to Mr. Gagliardi were not properly before this Court as it lacked subject matter jurisdiction. Those prior reports and decisions should be vacated, at a minimum as to Mr. Gagliardi, because it would be improper for Mr. Gagliardi to claim any precedential effect of such orders from a court that lacked subject matter jurisdiction to render such decisions as to him. Thus, even if the Court did deem the motion to dismiss mooted by allowing Plaintiffs to amend the pleadings, the Court should still render a decision vacating those prior reports and recommendations, decisions, and orders as they related to Mr. Gagliardi.

Notwithstanding, it is respectfully submitted that the Report's determinations should be disregarded and the motion to dismiss should be granted for the reasons discussed herein and in the related motion submissions.

IMANAGE\4771\0018\43005520.v1-10/24/24

II.    **THE REPORT OVERLOOKS THE ILLUSORY NATURE OF THE ASSIGNMENT OF CLAIMS BETWEEN THE PLAINTIFFS AND THE COURT SHOULD DEEM THE ASSIGNMENT UNENFORCEABLE AS A MATTER OF LAW**

After Plaintiffs entered into their Assignment Agreement, dated August 28, 2024, and submitted their Reply on August 29, 2024, Defendants were given the opportunity to submit a sur-reply which, for the first time, addressed the validity of the purported Assignment Agreement because, simply, it didn't exist before then.  Defendants argued that it was unenforceable both under federal law and state law.

With regard to the applicable federal law, Defendants argued that Mrs. Gagliardi was effectively "joined or made" to invoke jurisdiction of this court, in violation of 28 U.S.C. §1359. The Report dismissed this out of hand on the conclusion that the statute did not apply because Mrs. Gagliardi was a party before the assignment, and therefore not made or joined as a party because of the assignment.  However, the Report did not address the Defendants' argument originally put forth that the viable claims in this action were Mr. Gagliardi's – not Mrs. Gagliardi's – because Mr. Gagliardi was the sole payor of Mr. and Mrs. Gagliardi's combined tax liability. Mrs. Gagliardi did not have a right to recover for payments made by Mr. Gagliardi.  The Report conflated the legal concepts of "joint and several liability" (i.e., for an unpaid liability) and a right to recover (i.e., for sums paid).  But U.S. Courts have held that spouses are not entitled to recover on behalf of each other and instead that recovery of monies such as in the case of overpayments to the I.R.S. are "apportionable to the extent that he or she contributed to the overpaid tax." *Gens v. United States*, 230 Ct. Cl. 42, 45 (1982).  Here, there is no evidence that Mrs. Gagliardi paid a dime; rather, it is respectfully submitted that any and all payments were made by Mr. Gagliardi.

Since only Mr. Gagliardi had viable claims for damages, Mrs. Gagliardi was improperly made a party from the first day of the action.  Following this reasoning, it is respectfully submitted

5

that the Assignment Agreement effectively assigned claims to Mrs. Gagliardi to justify the propriety of her inclusion as a party; in other words, she was collusively "made" a party as that term is used in 28 U.S.C. §1359.

Moreover, although the cases naturally have factual distinctions, the assignment at issue here is very much in-line with the assignment at issue in *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 828 (1969). In *Kramer*, a foreign company sold their breach of contract claims to an attorney in Texas for $1 who immediately conveyed back to the foreign company 95% of any recovery on those claims. *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 827-28 (1969). The critical and determinative issue in *Kramer* wasn't the fact it was a corporation or the fact that the assignee was an attorney as the Report focused on; rather, the determinative issue was the retention of an interest and the clear desire to collect monies. *Id.* at 827-28. The Supreme Court also noted that, in *Kramer*, it was "candidly admit[ted] that the 'assignment was in substantial part motivated by a desire by [Panama's] counsel to make diversity jurisdiction available … .'" *Id.* at 828 (internal citation omitted).

Here, like in *Kramer*, Mr. Gagliardi sold the claims at issue for $10 to his wife, Mrs. Gagliardi. Moreover, by virtue of communal property laws, Mr. Gagliardi necessarily retains an interest in an actual recovery – if Mrs. Gagliardi receives $100, Mr. Gagliardi will have presumably equal access to those funds.[1] Moreover, Plaintiffs' counsel has also candidly admitted during oral argument that the assignment was, of course, made to make diversity jurisdiction available, just as was the case in *Kramer*.

---

[1] On Page 16 of the Report, a parenthetical suggests that the argument that (1) Mrs. Gagliardi did not have a legal right to seek damages purely by virtue of being Mr. Gagliardi's spouse is "in tension" with the argument that (2) Mr. Gagliardi retains an interest in recovery despite the Assignment Agreement. However, the noted "tension" appears to be based on the Report's conflating the legal concept of a "right to recovery" and "beneficial interest." An individual <u>does not have</u> a "right to recovery" simply by virtue of their spouse having a right to recovery. Conversely, a spouse <u>does have</u> a beneficiary interest in a recovery of monies by virtue of marital property laws.

In light of the foregoing, it is respectfully submitted that the Assignment Agreement is unenforceable as a matter of federal law pursuant to 28 U.S.C. §1359.

Defendants also argued that New York General Obligations Law §13-101, which expressly permits assignment of claims except where the transfer "would contravene public policy," similarly invalidates the Assignment Agreement. Defendants argued that the Assignment Agreement contravened the public policy of reducing the practice of forum shopping.

The Report, however, disregarded the argument on the basis that "Defendants have cited no case supporting their contention that Plaintiffs are engaging in improper forum shopping." (Report at p. 16) While Defendants certainly argued this constituted "impermissible forum shopping," the public policy at issue is to discourage forum shopping, period – not just "impermissible" forum shopping, which in and of itself is "impermissible." For example, in *Hanna v. Plumer,* 380 U.S. 460, 467 (1965), the Supreme Court construed *Erie v. Tompkins R.R. Co.* as an attempt to reduce "the practice of forum-shopping" between state and federal courts.

Forum selection is, admittedly, no issue. Had Mr. Gagliardi not been a stateless U.S. Citizen, he would have been free to choose whether to proceed in federal or state court. However, he is a stateless U.S. Citizen, and he has now manufactured a situation to litigate in the federal courts under the guise of diversity jurisdiction via a proxy (his wife). It wreaks of the exact kind of practice that public policy seeks to avoid and it is respectfully submitted the public policy is contravened by the Assignment Agreement at issue here. Accordingly, it should be deemed unenforceable as a matter of state law under New York General Obligations Law §13-101.

### III.    THE REPORT'S IMPLICIT FINDING THAT MR. GAGLIARDI IS NOT AN INDISPENSABLE PARTY IS INCORRECT

A. <u>Standard for Removal of a Party to Preserve Diversity Jurisdiction</u>

Dropping a party from an action in order to save diversity jurisdiction is only possible when the non-diverse party is **not** indispensable:

> Federal Rule of Civil Procedure 21 allows a court to drop a nondiverse party at any time to preserve diversity jurisdiction, *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832, 109 S. Ct. 2218, 104 L. Ed. 2d 893 (1989), provided the nondiverse party is not "indispensable" under Rule 19(b), 2 *see Curley v. Brignoli, Curley & Roberts Assocs.*, 915 F.2d 81, 89 (2d Cir. 1990).

*CP Sols. PTE, Ltd. v. GE*, 553 F.3d 156, 159 (2d Cir. 2009).  As outlined by Your Honor in the recent decision in *MAve Hotel Invs. LLC v. Certain Underwriters at Lloyd's*, courts in the Second Circuit consider four factors in determining whether a party is indispensable under Rule 19(b):

> (1) whether a judgment rendered in a person's absence might prejudice that person or parties to the action, (2) the extent to which any prejudice could be alleviated, (3) whether a judgment in the person's absence would be adequate, and (4) whether the plaintiff would have an adequate remedy if the court dismissed the suit.

*MAve Hotel Invs. LLC v. Certain Underwriters at Lloyd's*, 347 F.R.D. 20, 23 (S.D.N.Y. 2024).

B. <u>The Report Incorrectly Concluded that the Assignment Agreement to Mrs. Gagliardi Rendered Mr. Gagliardi Indispensable</u>

The collection of cases relied upon by the Report to conclude that the assignment rendered Mr. Gagliardi indispensable are distinguished from the instant matter because those matters involved pure breaches of contract with assignable rights and obligations. First, the Report relied on *On-Line Techs. V. Perkin Elmer Corp.*, 141 F. Supp. 2d 246, 254 (D. Conn. 2001) for the proposition that "an assignor of <u>rights and liabilities</u> under a contract is not needed for a just adjudication of a suit brought by the assignee." (<u>emphasis</u> added)  Emphasis placed on "rights and liabilities" because Mr. Gagliardi's liabilities were not assigned (nor could they be assigned). He

IMANAGE\4771\0018\43005520.v1-10/24/24

continues to owe obligations for services rendered to him, and he further is liable for his culpability in causing the damages for which Plaintiffs complain.

Second, the Report cites to *Durant v. Traditional Invs., Ltd.*, 135 F.R.D. 42, 48 (S.D.N.Y. 1991) for its collection of cases on the topic. The issue in *Durant* (a legal malpractice action) itself was a motion for sanctions against a defendant who had made multiple motions to dismiss for failure to join additional corporate defendants as necessary parties where, subsequently, it was disclosed that the purportedly "necessary" parties had "irrevocably assigned all right, title and interest in the proceeds" of a parent action to the defendant. *Id.* at 46-47. Conversely, here, Defendants are seeking to keep Mr. Gagliardi in the action because he has independent liabilities to Defendants, both arising from the counterclaims as well as his culpable conduct related to Plaintiffs' affirmative action.

The collection of cases contained in *Durant* are similarly incongruent with the situation at play here. The only Second Circuit decision in that collection of cases was *Malman v. United States*, 202 F.2d 483 (2d Cir. 1953), which didn't deal with the question of whether an assignor was an indispensable party at all.

The Report also conflates the analysis accorded to removal of a party under Rule 21, and cites to an inapplicable standard in *JM Holdings 1 LLC v. Quarters Holding GmbH,* No. 20-CV-3480 (JPO), 2021 WL 860516, at *7 (S.D.N.Y. Mar. 8, 2021) for the proposition that Mr. Gagliardi would not be needed "to accord complete relief among existing parties." This is the incorrect standard – that proposition cited is a quote of Rule 19(a), which deals with whether someone is a "necessary party." When determining whether to remove a party under Rule 21, there is no query under Rule 19(a) – the inquiry is under Rule 19(b) which deals with the question of whether the

party is "indispensable" – not whether they are "necessary." *CP Sols. PTE, Ltd. v. GE*, 553 F.3d 156, 159 (2d Cir. 2009).

In short, the Assignment Agreement does not render Mr. Gagliardi dispensable in this particular action with these particular facts. The Assignment Agreement does not affect Mr. Gagliardi's obligations to Defendants, nor does it relieve Mr. Gagliardi of his culpability in wholly causing or contributing to the damages of which Plaintiffs complain. At best, if the Assignment Agreement is enforceable, Mr. Gagliardi has only assigned his affirmative claims, but he remains responsible for his failings which are already at issue in this action and will involve litigation of the affirmative claims in any event.

Accordingly, it is respectfully submitted that the Report incorrectly concluded that the Assignment Agreement rendered Mr. Gagliardi a dispensable party and, to the contrary, Mr. Gagliardi remains an indispensable party.

### C. The Report Incorrectly Concluded There was no Prejudice

The Report makes a number of inaccurate suppositions in reaching its conclusion that there was no prejudice to Defendants if the Assignment Agreement is valid. At the outset, the Report inaccurately states that "it makes no difference whether the claim in this matter is brought solely by Rosita Gagliardi or by Plaintiffs together." Report at p. 17. It goes on to state that "[Mr. Gagliardi] would not be needed 'to accord complete relief among existing parties' and that his absence would not 'leave [Defendants] at risk of 'double, multiple, or otherwise inconsistent obligations.'"" Report at p. 17 (quoting *JM Holdings 1 LLC v. Quarters Holding GmbH,* No. 20-CV-3480 (JPO), 2021 WL 860516, at *7 (S.D.N.Y. Mar. 8, 2021) (citing Rule 19(a)(1)(A) and quoting Rule 19(a)(1)(B)). The Report's conclusions give absolutely zero consideration to the Defendants' defenses arising from the culpable conduct of Robert Gagliardi. From the standpoint of prejudice, it is substantially more difficult (if not actually impossible) to successfully assert and

prove affirmative defenses based on Mr. Gagliardi's conduct when he isn't a party – in fact, if he is removed as a party, a separate action will have to be commenced for indemnification and contribution against him. The claims for indemnification and contribution naturally will arise from his culpable conduct which is also at issue in the instant action, and there is serious risk of inconsistent determinations with regard to critical legal issues.

The Report also incorrectly concluded that Defendants would not be prejudiced because (1) Mrs. Gagliardi would be able to recover the entire amount claimed (Report at p. 19); (2) there's no risk of duplicative lawsuits (Report at p. 20); (3) Plaintiff has the burden of proving her case so making Mr. Gagliardi unavailable would only harm her and thus discovery-related issues are not prejudicial to defendants (Report at p. 21); and (4) Defendants' counterclaims can be fully satisfied by Mrs. Gagliardi (Report at p. 22). These are discussed in turn below.

First, Defendants' argument related to Mr. Gagliardi being the only one entitled to recovery was an argument put forth <u>before the Assignment</u> – if the Assignment Agreement is enforceable, then it is conceded that Mrs. Gagliardi would be able to recover the entire value of those claims. However, as discussed previously, without the assignment, Mrs. Gagliardi had no right to recover amounts paid by Mr. Gagliardi that is claimed as damages. There is no legal authority that provides for spouses to have joint rights to claims. The Report conflates joint and several liability obligations for payment of taxes with individual's rights with regard to causes of action. These are not interchangeable legal concepts, and without specific legal authority providing otherwise, the Court should not create such joint right of recovery.

Second, Defendants' argument regarding the risk of duplicative lawsuits was also initially put forth <u>before the Assignment</u>, but even if the Assignment Agreement is enforceable, Defendants remain subject to duplicative legal actions. Notably, the Report places undue emphasis on the

11

author's belief that Mr. Gagliardi wouldn't "intend" to file additional lawsuits.  The intent is irrelevant if the right to commence said lawsuits persists.  But even if Mr. Gagliardi couldn't commence said lawsuits, the Defendants will be compelled to commence a separate and overlapping action against Mr. Gagliardi in state court for, among other potential claims, (1) Breach of Contract (currently a counterclaim); (2) Account Stated (currently a counterclaim); (3) Indemnification (currently pled in the form of an affirmative defense arising from the fact that his culpable conduct is the sole cause of the alleged injuries/damages sustained); and (4) Contribution (currently pled in the form of an affirmative defense arising from his culpable conduct that contributed to the alleged injuries/damages sustained).  The pertinent facts and legal issues necessarily overlap with the affirmative claims asserted here.  For example, Mr. Gagliardi is likely to raise alleged professional negligence in defense of the Breach of Contract claim. For another example, Defendants claims would seek to expressly place fault for the alleged negligence Plaintiffs now claim squarely upon Mr. Gagliardi. The fact that Defendants will be forced to commence an entirely new legal action which will very likely produce differentiating results is incredibly prejudicial.

Third, the Report's conclusion that only Mrs. Gagliardi would be harmed by making Mr. Gagliardi unavailable as a witness is incorrect. Plaintiffs' affirmative case does not require a demonstration of no fault on behalf of Mr. Gagliardi.  To succeed on an accounting malpractice claim, Plaintiffs "must demonstrate a departure from accepted standards of practice and that the departure was a proximate cause of injury." *Gordon v. Vladislav Tsirkin CPA & Co., LLC*, 229 A.D.3d 450, 451 (2d Dept. 2024).  In other words, they must only prove that Defendants breached their duties.  Conversely, Defendants' primary defenses rely on attributing fault to Mr. Gagliardi – not Mrs. Gagliardi – and thus the prejudice would be sustained by Defendants by a failure of

Plaintiff to have Mr. Gagliardi appear for testimony or produce documents in response to discovery requests.

Fourth, the Report's conclusion that the Defendants' counterclaims can be fully satisfied by Mrs. Gagliardi is also a gross overstatement. At oral argument, recognizing this was an issue, Plaintiffs represented to the Court that they would deposit with the Court the full value of the counterclaims asserted to assure that the monies were available if Defendants succeeded. However, the ability to pay is a small part of it – before the Defendants are entitled to receive those funds, they must prove all elements of their counterclaims. It is respectfully submitted that unless Plaintiffs stipulate to the elements of the counterclaims, that cannot be achieved. For starters, Defendants did not contract with Mrs. Gagliardi – at best, she was an intended third-party beneficiary, but did not sign onto any obligations to Defendants (at least none known at this stage in litigation). She may have been unjustly enriched by receiving services without payment, but she did not breach a contract herself. The case law relied upon in the Report notably stands only for the proposition that joint and several liability is properly imposed where both parties signed onto a single contract and agree to the same performance and same promise. Report at p. 22, citing *NYKCool A.B. v. Pacific Fruit, Inc.*, No. 10-CV-3867 (LAK) (AJP), 2010 WL 4812975, at *11 (S.D.N.Y. Nov. 24, 2010) and *William A. Gross Const. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, No. 07-CV-10639 (LAK) (AJP), 2009 WL 427280, at *11 (S.D.N.Y. Feb. 23, 2009)). Here, these cases are inapplicable since Mrs. Gagliardi did not enter into a contract with Defendants (of course, subject to discovery on this issue). The counterclaim for breach of contract is properly brought against Mr. Gagliardi.

The Report further improperly contemplates the possibility of pursuing a counterclaim against Mrs. Gagliardi as principal to Mr. Gagliardi as agent, which adds an entire new elemental

13

layer to the claim that is, in the first instance, properly asserted against Mr. Gagliardi. This improperly contemplates <u>raising the Defendants' burden</u> on their claims, which is inherently prejudicial.

Moreover, as was argued in the sur-reply, the Second Circuit has expressly recognized that a Plaintiff may be an indispensable party when they are the sole-obligor or even a co-obligor. *Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 74-75, 77-78 (2d Cir. 1984). In *Envirotech Corp.*, the plaintiffs' action had been dismissed for lack of subject matter jurisdiction (due to lack of diversity) and the defendant attempted to save the counterclaim by dropping the nondiverse plaintiff/counterclaim defendant as a party. The Second Circuit found that the plaintiff/counterclaim defendant as the sole obligor on the contracts at issue in the counterclaims was an indispensable party under Rule 19(b) and could not be dropped, and thus dismissed the counterclaim for lack of subject matter jurisdiction. Of note, the Second Circuit specifically noted that concluding that the plaintiff/counterclaim defendant was the "sole-obligor" was "not necessary to our affirmance," but "adds weight to the argument of indispensability." *Id.* at 75-76.

The Report sought to distinguish *Envirotech Corp.* based on the assertion that Mr. Gagliardi did not "wholly own" the contract – except, the problem with that distinction is that he was the sole obligor. The Report further engaged a logical fallacy that because there is not a parallel lawsuit as of now, the cases are distinguished, while ignoring that a parallel lawsuit will be necessitated in the event Mr. Gagliardi is removed as a party.

D.  <u>The Report's Suggestion That the Decision Will be Dispositive of the Counterclaim Highlights the Prejudice Incurred by Defendants</u>

In the beginning of the Report, it states in note 1 that "[t]he resolution of the motion therefore is dispositive of those counterclaims" as to the dropped Plaintiff. The fact that the Court

would have to dispose of a claim that is properly asserted by Defendants against Plaintiff is, in and of itself, demonstrative of the prejudice that Defendants would experience.

    E.   <u>A Judgment in the Absence of Mr. Gagliardi Would Not be Adequate Because it Would Not Account for Mr. Gagliardi's Culpable Conduct and Separate Liability</u>

While the Defendants argument on the adequacy of a judgment was truncated for efficiency in the letter pleadings, they hit the crucial points – that (1) Mr. Gagliardi is the person with whom Defendants contracted; (2) Defendants performed services for Mr. Gagliardi; and (3) a separate action would be required to recover for breach of contract from Mr. Gagliardi.

Other points already covered in the prior sections of the argument similarly went to adequacy. For example, the judgment would not be adequate because since it is Mr. Gagliardi's culpable conduct at issue on the affirmative defenses, and not necessarily Mrs. Gagliardi's culpable conduct, a judgment rendered without Mr. Gagliardi would not be adjusted for his culpable conduct and, in fact, could theoretically result in a financial obligation to Mrs. Gagliardi where, in the separate action against Mr. Gagliardi, Defendants are entitled to Indemnification.  Such a scenario, which is entirely feasible, would result in the absurdity of Defendants obligated to pay a judgment to Mrs. Gagliardi with Mr. Gagliardi obligated to pay a judgment to Defendants of same or similar amounts.

So, to the extent that "adequacy refers to the 'public stake in settling disputes by wholes, whenever possible'" *CP Solutions,* 553 F.3d at 160 (quoting *Republic of Philippines v. Pimentel,* 553 U.S. 851, 870 (2008)), removing Mr. Gagliardi would not allow this dispute to be resolved in one fell swoop – issues will be litigated in duplicate and the judgments will not account for all issues in controversy arising from the same set of facts.

Accordingly, it is respectfully submitted that removing Mr. Gagliardi would prevent the Court from being able to render an adequate judgment.

### III.    THE MOTION TO DISMISS SHOULD BE GRANTED

The Report's recommendation to deny the motion to dismiss the amended complaint is solely premised on mootness by virtue of removing Mr. Gagliardi.  Should the Court agree that Mr. Gagliardi is an indispensable party for the reasons discussed above, the Court should grant the motion to dismiss the Complaint without prejudice for lack of subject matter jurisdiction.

### CONCLUSION

For these reasons, Defendants respectfully submit the foregoing objections and request that this Court grant their motion to dismiss Plaintiffs' Amended Complaint in its entirety and deny the Plaintiffs' motion to amend the complaint.

Dated:  New York, New York
           October 24, 2024

_____
**Christopher Lyon (CL3484)**

16

## CERTIFICATE OF SERVICE

I, Christopher Lyon, do hereby certify that on **October 24, 2024**, the foregoing document was filed electronically and was served in accordance with the applicable rules of Civil Procedure and of the court.

_____

**Christopher Lyon (CL3484)**

IMANAGE\4771\0018\43005520.v1-10/24/24